McCown's Executors and others v. John A. Foster and others.

1. Though sales of land were wrongfully made by an administrator under orders of sale fraudulently procured by him from the probate court, yet the titles of purchasers at the sales will be protected unless there be satisfactory evidence that they were guilty of complicity with or had notice of the fraud of the administrator. In default of such evidence, the relief granted to the heirs of the intestate in the present case was a judgment against the administratoi for the value of thɔ land at the commencement of this suit, with interest until final payment be made.

Appeal from Montgomery. Tried below before the Hon. E. A. Palmer.

Mary Corley died in 1847, leaving four children, who were her heirs, and also legatees under her will. Alexander McCown was appointed administrator of her estate, with the will annexed.

The plaintiffs in this action were her heirs and legatees, and the object of the suit was to surcharge and falsify the accounts of McCown as administrator, and also to recover from Ballew and Grayless, land purchased by them at sales made by McCown as administrator, under orders obtained by him from the Probate Court. Fraud and maladministration were fully and particularly charged, and complicity therein was imputed to Ballew and Grayless.

McCown was dead when J. A. Foster, the eldest child of Mary Corley, attained his majority. This suit, therefore, was instituted against the executors of McCown, and was brought by John A. Foster in his own right and also as next friend of his brother and sisters, still minors.

There appears to be no occasion to give more than this outline of the character of the case. The judge of the court below set aside, in his final decree, the sales made to Ballew and Grayless, and revested title to the land bought by them, in the plaintiffs, but

giving Ballew and Grayless recourse against McCown's estate for the purchase money paid by them, with interest. This portion of the decree is reformed by this court in the manner stated in the opinion. The plaintiffs also had judgment against McCown's executors for sundry amounts allowed him in his accounts as administrator, and in this respect the judgment below is simply affirmed. There are cross-appeals from the judgment below.

*N. H. Davis*, for McCown's executors and the other defendants below.

*Gray & Botts*, for plaintiffs. —We take it as clearly shown by the record, that McCown acted in bad faith and against the interests of the estate, both in allowing claims and in not resisting the order for sale. The estate records showed that he ought to have had and was chargeable with funds sufficient to pay all just debts, and with circumstances to put all on guard that the necessity for a sale of lands, contemplated by the statute authorizing the court to order it, did not in fact exist.

Yet the interests of these minor children were disregarded on all hands. One of the purchasers of part of the land afterwards reconveyed to McCown, the administrator, and a very strong suspicion is raised that Ballew, the other purchaser, acted in collusion with McCown in purchasing, but afterwards refused to carry out the understanding, although the jury found against the issue of fraud in his purchase. This, we contend, was not necessary to be shown to authorize the court in this proceeding to set aside the sales and declare the title to the lands to be in the heirs, although in a collateral proceeding, as by ejectment, these orders and sales could not be disregarded, but would be held valid until set aside by proceedings for that purpose. We think that no case has yet gone the length of saying that in a direct proceeding like this, the orders may be decreed invalid, and yet the title to the land stand

vested in the purchaser.  To say this would be declaring to the minor heirs that, although the administrator has acted fraudulently and without necessity, though the court has made an order for sale when no necessity existed for it under the law, and no power is given to order such sale without a clear necessity in fact exists; and although these things might have been known to a purchaser with due inquiry and examination into the estate records, yet, as you were minors and had no representative but the administrator—and he has sacrificed your rights—the law has deprived you of your lands, and you must look to him for damages. Is that the law of Texas in relation to estates of deceased men and women?  We think not.  On the contrary, the very act of the Legislature under which proceedings are allowed in estates, expressly provides that parties interested shall have two years in which to have a revision of all orders in the county court, by appeal or *certiorari*, which is only another mode of appeal.

It is a direct proceeding reserved by the same law which authorizes a sale, and subject to that reservation must all sales be made. The utmost injustice would be done to minors should any other view be allowed to prevail.  The statute expressly declares that any person interested may have the proceedings of the county court in estates revised and corrected by the district court by *certiorari*, and two years after removal of disability is given to infants. (Paschal's Digest, Arts. 480, 482.)  And appeal and *certiorari* are held to be concurrent remedies.  (Ray v. Parsons, 14 Tex., 371.)

These provisions, it seems, were intended to preserve the rights of minors, to save to them the right to be heard in assertion of their rights, and that they should not be completely divested and debarred of all claim to property of their ancestor until opportunity was had to contest.  If not so, then it may as well be declared at once that minors have no claim to property sold by order of the court, but only to claim damages for a *devastavit* against the administrator.

We respectfully submit that such was not the intention of the law, and that the consequences of such a doctrine would be ruinous to that class of community—minors and married women—whose interests should be most carefully protected. The case of Baxter v. Lynch, 4 Tex., 431, shows the distinction between a collateral and direct attack.

Should, however, that view be sustained, and it be held that these proceedings were so apparently regular that the purchaser must be protected, then we submit, with confidence, that the district court should have given the heirs the full measure of redress against the administrator, McCown, in the value of the land at the time of trial, and not have limited them to claim the value at which it was sold to Ballew. If they are not entitled to recover the land from the purchaser, because it cannot be shown that he purchased fraudulently, yet it does appear that the administrator acted in bad faith and without necessity. By his act they have been deprived of property which would otherwise remain to them, and he ought to be made to compensate them to the full extent of the value of the land at the time of trial.

"Such misconduct is called, in law, a *devastavit*, which is a mismanagement of the estate and effects of the deceased, in squandering and misapplying the assets contrary to the duty imposed on them, for which executors and administrators shall answer out of their own pockets, as far as they had or might have had, assets of the deceased." (2 Williams on Exec., 1629.)

Betts v. Blackwell, 2 Stewart and Porter, 373, was a case of negligence from which property was lost, and the administrator held liable for its value.

Chancellor Kent, in the case of Hart v. Ten Eyck *et al.*, decreed that land, if it remained under control of the representative of the administrator, should be conveyed to the heirs plaintiff; but if it had been improvidently sold under order of the probate court, the administrator's estate must answer for its value at the

time of suit brought, if not at time of decree.  (Hart v. Ten Eyck, 2 Johns. Ch. 62, p. 116.)

The same principle is established by the case of Lockhart v. White, 18 Texas R., 102 to 112.

If an executor takes upon himself to act with his testator's property in any other manner than his trust requires, he puts himself in this situation, that he cannot possibly be a gainer by it.  Any gain must be for the benefit of the *cestui que trust*, and if there is loss upon the capital, as if the stocks rise ever so much, he must replace it, in order that the *cestui que trust* may sustain no damage from his conduct.  (Piety v. Stace, 2 Vesey J., 619 ; see also, Rowland v. Witherdon, 11 Eng. Law and Eq., 131; Moult v. Leith 10 Eng. Law and Eq., 123.)

Certainly, equity should give as large a measure of compensation for lands lost by the fault of another as a common law court would for chattels.  (Sedgwick on Damages, 58 to 67 ; Id., 505, 506.)

There are other points in the record which might be noticed, but we think them immaterial and unnecessary to be urged now. The circumstances of the parties, and of the case in relation to evidence have so greatly changed that all are willing and anxious that there should be a final determination, one way or the other. The whole case, more full and complete than it can ever be made again, is before the court, and in a position for such final decree as ought to be made.  If the lower court has erred, we urge with the appellants that the decree may be reformed and such decree now entered as ought to have been rendered.

WALKER, J.—This was an action brought by the heirs at law of Mary Corley, who died testate in 1847, to surcharge and falsify the accounts of McCown, the administrator with the will annexed, and to set aside certain sales made by him of lands.  There has been very protracted litigation, involving great expense to the

parties and their legal representatives, for the case appears to have outlived a generation of men and women, and a record of four hundred and fifteen pages has accumulated before the case has reached this court.

The case is in the nature of a proceeding in chancery. Certain issues of fact were made up and submitted to a jury, and the findings not being satisfactory either to plaintiffs or defendants, the case was, by consent, taken from the jury and submitted to the court. The judge, after very mature consideration of the law and the evidence, at the April term, 1861, entered a decree, from which both plaintiffs and defendants appealed.

The decree is substantially correct, and we are not disposed to disturb it, except to protect the purchasers at the administrator's sales. We think that the administrator, McCown, was guilty of a *devastavit*, if not of willful malfeasance in office; but it is not made sufficiently clear to us that Ballew and Grayless, the purchasers of the land sold by McCown, are chargeable with complicity or notice of fraud; and as innocent purchasers, they must be protected. But we will give the plaintiffs below a decree for the value of the land at the time they brought their suit, with interest at eight per cent. from that time until the money is paid. The decree will be against the estate of McCown, the money to be paid by his legal representatives in due course of administration.

In all other respects, the decree of the District Court is confirmed, and the cause is remanded for such further proceedings as may be necessary to carry it into force.

Remanded for further proceedings.